No. 60.—JOHN WILLIAMSON, Executor of Henry Taylor, deceased, plaintiff in error *vs.* GILBERT A. WILKINS and his WIFE, defendants in error.

[1.] Executors and administrators are entitled to commissions for paying out *legacies* as well as *debts*, to be charged on the assets in their hands, provided there be any general estate; and if not, then legacies as well as debts, are to abate *pro tanto*.

[2.] Trustees are entitled to commissions for receiving and paying out dividends on Bank and other stocks.

[3.] In deciding whether a trustee shall retain the possession and management of the trust estate, against the equitable tenant for life, Courts will be governed mainly by the general scope and object of the trust; and the nature of the duties which the trustee is required to discharge.

[4.] Courts will invest the equitable tenant for life, with the personal possession and occupation of property, as in the case of a family residence or family servants, where it will be beneficial or requisite for its due enjoyment. Courts will interfere more reluctantly to take the direction and disposition of the estate out of the hands of the trustee, where the surrender of the *corpus* might endanger its security; or where the equitable tenant for life is a *feme covert*, for whose personal protection it is best that the estate should continue in the possession and under the control of the trustee.

[5.] The provision of the Statute of the State, which allows a trustee to charge commissions where he performs service, does not annul the general doctrine resulting from the relation of trustee and *cestui que trust;* nor abrogate the equitable jurisdiction of a Court of Chancery over the same; *which jurisdiction is exceedingly broad.*

In Equity, in Chatham Superior Court. Decision on demurrer, by Judge FLEMING, at Chambers, Dec. 30th 1853.

Gilbert A. Wilkins and his wife, Mary C. Wilkins, filed a bill against John Williamson, as executor of Henry Taylor, deceased, showing that by the will of testator, the sum of $30,000 was bequeathed to Mrs. Mary C. Wilkins, to be invested in Bank Stock, the dividends of which were to be paid to the said Mary C. during her life; that the investment was made by the executor; and the dividends regularly drawn and paid, he deducting his commissions therefrom. The prayer was for an account of the commissions thus deducted; and

that they be refunded to complainants; and that in future she be allowed to draw the same directly, and without the intervention of the executor.  On demurrer, the presiding Judge held that John Williamson acted as to this fund, as the executor of Henry Taylor; and that his commissions should not be taken out of the dividends, but be charged against the general estate of the testator; and for this reason overruled the demurrer.  This decision is assigned as error.

G. Owens & McAllister for plaintiff in error.

Law & Bartow, for defendant in error.

*By the Court.*—Lumpkin, J., delivering the opinion.

Henry Taylor, by his will, among other bequests, directed his executors to invest $30,000 in Bank Stock, in one or more of the Banks in Savannah, State of Georgia, the dividends from which, to be paid regularly as they were declared, to his wife, Mary Caroline Taylor, during her natural life, and after her death, to be divided among her children by him, share and share alike; and if only one survived his wife, the whole to go to that child.

The testator appointed John P. Williamson and others, executors *in trust* of his said will.  John P. Williamson alone qualified in Georgia.  He died, leaving Henry McCalpin and John Williamson his executors. ' Henry McCalpin and John Williamson having qualified on the will of John P. Williamson, and not having renounced the executorship devolved upon them by law, of their testator's testator, became the executors of Henry Taylor, deceased.  Henry McCalpin and John Williamson filed their bill for direction, in the Superior Court of Chatham county; under which a decree was rendered, disposing of all of the assets in their hands, belonging to the estate of Henry Taylor, deceased.  And among other things, they were ordered to set apart one hundred and fourteen shares of the stock of the Bank of the State of Georgia, on which one hundred dollars per share had been paid; and one hundred

and eighty-six shares of the stock of the Central Rail Road & Banking Company of Georgia, on which one hundred dollars per share had been paid, as the fund of $30,000; the dividends whereon, were to be paid to Mrs. Mary C. Wilkins, formerly Mrs. Mary Caroline Taylor, for life, according to the will of her deceased husband, Henry Taylor.

Henry McCalpin died, and John Williamson thereby became the sole executor of Henry Taylor in Georgia.

The $30,000 were invested in stock of the different Banks of Savannah, according to the will of Henry Taylor, and the decree of the Court rendered thereon.

Mr. Williamson charged commissions at 5 per cent. (that is, $2\frac{1}{2}$ for receiving and the like amount for paying out) upon the dividends, claiming the right under the will and under the law, to receive and pay out the dividends, and to charge the said commissions. A bill was filed by Mrs. Wilkins and her present husband, Gilbert A. Wilkins, to compel Mr. Williamson to pay to Mrs. Wilkins the amount of the commissions so retained by him out of her legacy; and to execute a power of attorney to her, to receive the dividends herself, in order that she may be freed from said pretended claim in future.

To this bill, a general demurrer was filed; and upon the argument of the demurrer, Judge Fleming decided that Mr. Williamson, in this business, was acting in his character of executor, and that he was entitled to commissions; but that they must be paid out of the general estate of the testator; and could not be charged on the legacy, so as to cause an abatement thereof. In other words, that Mrs. Wilkins was entitled to her whole legacy, undiminished by the charge of these commissions.

The Judge places his decision upon the Statute of the State, to be found in *Cobb's Digest, page* 304, which is as follows: " It shall and may be lawful to and for all and every executor and administrator, guardian and *trustee*, for his, her and their care, trouble and attention, in the execution of their, or either of their several duties and trusts, to take, receive or retain in his and their hands, a sum not exceeding fifty shillings for every

hundred pounds, &c.; and the like sum of fifty shillings for every hundred pounds which he, she or they shall pay away in debts, *legacies*, or otherwise, excepting, &c.: provided, that no executor, administrator, guardian or *trustee*, who is or may be creditor of any testator or intestate, or to whom is or may be left or bequeathed, any sum or sums of money or other estate or effects, shall be entitled to any reward or commissions for the payment or retaining to themselves any debts or legacies, any law, usage or custom to the contrary, notwithstanding."

Now our learned brother comments upon this Act in this wise: "According to my understanding of this Statute, an executor is as fully authorized to charge commissions on the payment of a legacy, as on the payment of a debt. The law is explicit that the executor *shall* 'Have fifty shillings on every hundred pounds which he may pay away in debts, *legacies*, or otherwise'. No one doubts the right of an executor to charge commissions on the payment of a debt. And yet, under this Statute, I would as soon doubt his right to charge commissions on the payment of a debt as a legacy. For the very words of this Act which gives him the right to charge commissions on the payment of one, equally authorizes him to charge commissions on the payment of the other. In regard to the right then, to charge commissions, the executor stands to legacies, precisely as he does to debts. Whatever rights he has in regard to debts, he has the same rights in regard to legacies.

"What, then, are the rights of executors, as to commissions, in the payment of debts? Most clearly, he is entitled to charge commissions: but who ever heard that the creditor had to pay these commissions? Is not the creditor entitled to his *whole debt*, undiminished by the commissions of the executor? Undoubtedly he is. Now is there anything in the Statute, showing or tending to show, that the legatee is in any worse condition than the creditor? Is not the legatee entitled to receive his *whole legacy*, undiminished by the commissions of the executor? I cannot doubt, that if the creditor is

entitled to his whole debt, that the legatee is equally entitled to this whole legacy."

[1.] We concur fully with the presiding Judge, that Mr. Williamson is entitled to his commissions, for receiving and paying out these semi-annually accruing dividends. And that, too, whether he acted in this business as executor, or was as to this legacy, a *mere trustee,* according to the case of *Byrchall vs. Bradford,* (6 *Madd.* 13,) where it was held, that when an executor, who happens also to be named a trustee of a legacy to be laid out in stock, has fully administered the estate and assented to the legacy, and retains the legacy in his hands, not as assets of the testator, but as trustee of the legacy, he is then no longer clothed with the character of executor; but is, as to the legacy, a mere trustee.

We agree also in the opinion of the Circuit Court, that as to the principle involved in this controversy, debts and legacies stand on precisely the same footing. And that the one can no more be diminished by the payment of commissions than the other. But as it regards both, suppose there are no other assets out of which commissions could be paid, would not debts as well as legacies, have to abate *pro tanto ?* The expenses of administration, among which are the commissions of the representative, must *first* be paid, whether enough be left to satisfy debts and legacies or not. And that is precisely the situation of this case. There is in the hands of the defendant, Mr. Williamson, no general estate out of which these commissions can be paid. By the decree of the Court, which is made the foundation of the complainant's bill, and behind which they do not seek to go, the whole of the estate of Henry Taylor, deceased, in the hands of John Williamson, the executor, was distributed. The assets were fully administered. The legacy of $30,000 left to his wife by the testator, was then segregated from the rest of the estate. For the investment of this fund in Bank Stock, which was the payment of this legacy, in contemplation of our Statute, the executor was allowed to retain his commissions out of the general estate.

[2.] And now, as to the dividends, if the executor or trus-

tee, as the case may be, is not permitted to deduct his commissions out of this money, he can get it nowhere else. Neither this $30,000, nor any other legacy under this will, will ever return into the residuum of the estate. The remainder as well as the life estate of the whole are disposed of. We cannot concur, therefore, in the conclusion that Mrs. Wilkins is entitled to receive the dividends on the Bank Stock, undiminished by the commissions which have been retained thereon. Even if there were any general estate upon which these commissions might be charged, the justice of directing it to be done, might well be questioned; the service being rendered for the exclusive benefit of a particular legatee.

[3.] The only inquiry which remains, is as to the relief sought by the bill. Ought it to be granted?

The right of a trustee to retain the possession and management of the trust estate, against the equitable tenant for life, is frequently the subject of controversy. And Courts, in deciding this question, will be governed mainly by the general scope and object of the trust, and the nature of the duties which the trustee is required to discharge. (*Hill on Trustees*, 273.)

[4.] Were the effort here, to take the *corpus* of this fund out of the hands of the trustee, and to deliver it over to the *cestui que trust;* or would the payment of the dividends directly to Mrs. Wilkins by the Banks, defeat the object of the testator in setting apart this fund for the benefit of his wife, we should feel more reluctant to take the direction and disposition of the fund out of the hands of the trustee. But the bill does not seek to disturb the *corpus.* That remains under the power and protection of the *trustee.* And as to any guaranty that the Court may have, that Mrs. Wilkins shall enjoy the bounty thus provided by her former husband, can it make any difference whether she receipts for the dividends *in person*, as the bill prays she may, or that the trustee shall continue to do so, giving her a check upon the Bank for the amount, *minus* five per cent. his commissions?

We must say, that we can see no reason for thus saddling

this trust estate with this heavy incumbrance, throughout its duration and continuance, for a wholly unnecessary service.— This estate was created for the benefit of Mrs. Wilkins and not of Mr. Williamson.

If a Court of Equity will put the tenant for life in the personal possession and occupation of property, if it be beneficial or requisite for its due enjoyment, as in the case of a family residence or slaves, as it undoubtedly will, much more will it do that which asks no surrender of the corpus; which involves the trustee in no responsibility, and which can endanger the rights and interests of no one.

[5.] It has been contended, that to grant the prayer of the complainants, would be to interfere with the Statute of the State already cited, and which allows a trustee to charge commissions. And true it is, that when he performs a service, he is entitled to be paid. But it would be strange indeed, if that fact should annul the whole doctrine resulting from the relation of trustee and *cestui que trust;* or abrogate the equitable jurisdiction of a Court of Chancery over the same. The length and breadth, heighth and depth of this jurisdiction, is perhaps not yet fully comprehended by the profession in this State. It is certainly broad enough to authorize the Court to grant the relief sought in this case.

Judgment affirmed.